**Scott D. FITTS**

v.

**CENTRAL MAINE POWER COMPANY.**

Supreme Judicial Court of Maine.

Argued June 7, 1989.
Decided Aug. 2, 1989.

---

James E. Mitchell (orally), Augusta, Mark S. Kierstead, Waterville, for plaintiff.

Kristin A. Gustafson, Phillip E. Johnson (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Augusta, for defendant.

Before WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

CLIFFORD, Justice.

The plaintiff, Scott D. Fitts, appeals from a judgment for the defendant, Central Maine Power Company (CMP) entered following a jury trial in the Superior Court (Kennebec County, *Brody, C.J.*). Fitts, a Fairfield Police detective, alleged in his complaint that CMP negligently failed to disconnect the electrical power to a burning building and, as a result, he received an electrical shock when he entered the building to investigate a possible arson. Finding no error, we affirm the judgment.

The evidence presented at trial showed the following facts. On Saturday, May 15, 1982, a fire at 221 Main Street in Fairfield was reported in progress at 9:40 p.m. Firefighters were on the scene as early as 9:42 p.m. At 10:16 p.m., the fire chief requested a "fire disconnect" from CMP. In response to a fire disconnect, CMP would initiate a procedure whereby a CMP lineworker would go to the scene of a fire and physically disconnect the electrical service to the burning building in order to eliminate the risk of electrical shock to firefighters or others entering the building. In the alternative, CMP could, if necessary, switch off the electrical current to the entire service area when human life was in danger or to prevent serious property damage. CMP's average response time to a fire disconnect was fifteen to twenty minutes, but could exceed thirty-five minutes. During the weekdays, CMP used regular crews to perform fire disconnects. During weeknight hours, CMP had a lineworker on patrol in each service district and available to perform fire disconnects. During all weekend hours and from 12:00 a.m. to 7:00 a.m. on weekdays, a lineworker for each district would bring a service truck home and be on an "on call" status. The response in this case was from an "on call" lineworker. The lineworker's residence was in Windsor, a considerable distance from the location of the fire.

At about 10:40 p.m., before the CMP lineworker arrived to disconnect the service, Detective Fitts entered the burning building to retrieve evidence concerning a suspected arson. Fitts did not ascertain

whether the power was disconnected before he entered the building. As he stood in ankle-deep water on the first floor of the building, his metal flashlight apparently made contact with a live electrical wire and he received an injurious electrical shock.

The court denied motions for a directed verdict made by both parties. The jury found both parties negligent, but found the negligence of Fitts to be equal to or greater than CMP's negligence. This appeal followed the denial of Fitts's motion for a new trial.

■ Fitts first argues that the court failed to properly instruct the jury on negligence. Although Fitts does not contest the court's instruction as to what constitutes negligence in general, he contends that the court improperly refused to elaborate on that instruction and to apply the negligence standard to CMP in particular.[1] Specifically, Fitts contends that the court was required to instruct the jury on the difference between the *duty* of care owed by CMP and the *degree* of care that CMP had to exercise as an electric utility to meet that standard. In essence, he argues that CMP, because it deals with electricity, must conform to a higher than ordinary degree of care in order to avoid negligent conduct.

The language of Fitts's proposed jury instruction was taken from *Edwards v. Cumberland County Power & Light Co.*, 128 Me. 207, 146 A. 700 (1929) and *O'Brien v. J.G. White & Co., Inc.*, 105 Me. 308, 74 A. 721 (1909). In *Edwards*, the plaintiff alleged that the defendant electric utility had negligently maintained its lines, causing an excessive surge of electricity through the electrical service line to the plaintiff's house, resulting in a fire. We vacated the verdict against the utility. In *O'Brien*, we upheld a verdict in favor of the plaintiff who was injured while working on electrical lines that the defendant utility was responsible to insure were free from live current. In those cases, we discussed electricity and its potential for dangerousness as a circumstance properly considered by the jury in determining whether the defendant breached its duty of care. In neither case, however, did we lay down a different standard of care for an electric utility. We said that an electric utility is subject to "the general principles of the law of negligence" and is "bound to exercise due care and diligence," *Edwards*, 128 Me. at 212, 146 A. 700, and that "[t]he standard of care required of [an electric utility is] such care as an ordinarily reasonable and prudent person would have exercised under like circumstances." *O'Brien*, 105 Me. at 313, 74 A. 721. We also said it was for the jury to determine if that standard was met. *Id.* Contrary to Fitts's contention we have never imposed upon trial courts an obligation to instruct the jury that because of the nature of electricity, an electric utility is subject to a negligence test that differs from the standard applied to other litigants.

The jury instruction on negligence in this case was general, but accurately stated the law.[2] The extent to which an otherwise adequate jury instruction is amplified and expanded to apply to the particular facts of an individual case is left to the sound discretion of the trial court. *Olsen v. French*, 456 A.2d 869, 877 (Me.1983); *Towle v. Aube*, 310 A.2d 259, 266 (Me.1973).

'A party does not have a right to a requested special instruction unless it states the law correctly, appears to be supported by the facts of the case, is not

---

1. Fitts also objects on appeal to the court's failure to instruct the jury on the negligence standard applicable to him in particular. Fitts did not submit a proposed jury instruction specifically tailored to the duty of care he maintains he was required to exercise as a police officer, and he failed to object to the instructions given as they applied to him. He is thus precluded from now arguing that those instructions as applied to him were inadequate. *Knight v. Penobscot Bay Medical Center*, 420 A.2d 915, 919 (Me.1980); M.R.Civ.P. 51(b).

2. The court instructed the jury that "[n]egligence is doing something that an ordinary careful person would not do or the failure to do something which an ordinary person would do in the same situation. It is ... the failure to use ordinary care under the circumstances, considering all of the facts in the case...." The court went on to say that "the jury must determine whether or not the parties acted reasonably under all the circumstances then existing at that time and place."

misleading or confusing, and is not already sufficiently covered in the given charge, and unless the refusal to give it would be prejudicial to the requesting party.'

*Lambert v. Tripp,* 560 A.2d 1097, 1099 (Me.1989) (quoting *Schneider v. Richardson,* 438 A.2d 896, 897 (Me.1981)). *See also Johnson v. Gerrish,* 518 A.2d 721, 723 (Me. 1986).

The court instructed the jury that CMP is subject to the general law of negligence. That it deals with electricity is one of the "circumstances" the jury was free to consider when determining whether CMP was negligent. Fitts was free to argue to the jury that given the circumstance of the dangers of electricity, CMP's response to the request for a fire disconnect failed to meet the ordinary standard of care.[3] The court's jury instruction on negligence correctly stated the law, and it was not an abuse of discretion for the court to refuse to elaborate on that instruction as requested by Fitts. *Lambert,* 560 A.2d at 1099; *Olsen,* 456 A.2d at 877.

Fitts next argues that the court improperly excluded evidence of what it would cost CMP to have lineworkers on duty on weekends and during the early morning hours of weekdays instead of being on call at home. Not only did Fitts fail to make an offer of proof as to the cost of CMP hiring additional on-duty lineworkers, he submitted no evidence that cost was a factor in CMP's on-call procedure. He is precluded from objecting to that exclusion under M.R.Evid. 103(a)(2).[4] Moreover, Fitts's attempt to introduce evidence of CMP's profits was properly excluded by the court under M.R.Evid. 403 because its probative value was outweighed by the danger of unfair prejudice and confusion.

Fitts also contends that he was not negligent as a matter of law, or if he were negligent, that the negligence of CMP had to be greater. Fitts asserts that for this reason the court improperly denied his motions for a directed verdict and for a new trial. Fitts disregarded several safety rules when he entered the burning building to investigate a possible arson. There was expert evidence that Fitts entered the building too soon. Fitts did not check to determine if the power was disconnected before entering the still-burning building. Moreover, he entered the building without boots, gloves or other protective clothing and stood in ankle-deep water carrying a metal flashlight. There was evidence that his injury resulted from contact between the metal flashlight and a live electrical wire. It was within the province of the jury to find that Fitts was negligent and that his negligence was equal to or greater than the negligence of CMP.

That Fitts was injured in the course of his official duties, investigating a fire, was a legitimate consideration for the jury, but we reject Fitts's contention that a police officer performing official duties is subject to a standard other than ordinary care under the circumstances. The negligence of Fitts and of CMP, and the comparison of what was found to be their respective negligent conduct, were issues properly for the jury's determination. There was no error in the court's denial of Fitts's motion for a directed verdict, and no abuse of its discretion in the denial of his motion for a new trial.

The entry is:

Judgment affirmed.

All concurring.

---

3. The closing arguments of counsel were not included in the transcript that was part of the record in this case.

4. M.R.Evid. 103(a)(2) provides:
   (a) Effect of erroneous ruling. Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and

. . . .

(2) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.